MERRITT, Circuit Judge,
dissenting.
Benjamin Wherry, an African-American, like almost all crack defendants, was engaged in the crack cocaine trade in the 1990s and received a 20-year federal sentence, in part because of an enhancement for two prior felonies. He will not be eligible for release from prison until 2017, unless we allow the lower court to consider him for release under the new Fair Sentencing Act of 2010, and its guidelines, which substantially reduce crack cocaine sentences. The new Act was adopted by Congress after considering testimony of many witnesses and reports that the old crack cocaine sentencing system that reigned for 25 years was grossly discriminatory against African-Americans. For example, among many others, the Chairman of the Senate Judiciary Committee that reported out the new Act said that the Act was adopted because the old system was “one of the most notorious symbols of racial discrimination in the modern criminal justice system.” 156 Cong. Rec. S.1683 (Daily ed. March 17, 2010). The Supreme Court also has said in this connection that the new law was adopted “because the public had come to understand *440 that sentences embodying the 100-to-l ratio as reflecting unjustified race-based differences.” Dorsey v. United States, — U.S. -, 132 S.Ct. 2321, 2328, 183 L.Ed.2d 250 (2010) (emphasis added). As my colleagues say in their opinion, the trial court itself said at Wherry’s sentencing in 1997 that the court had no choice under the sentencing guidelines; it had to sentence Wherry to this “particularly harsh” sentence. In spite of the acknowledged racial discrimination underlying the crack sentencing scheme, our court can find no way to remedy the unfairness. It simply perpetuates the wrong by doing nothing. I think that the wrong can easily be corrected.
First, the majority’s argument that Wherry’s sentence is not “based on” the crack cocaine sentencing table found in § 2D 1.1 defies common sense and ignores the reasons Wherry was before a sentencing judge in the first place. The majority wants to dispense with the initial calculation of the offense based on Wherry’s criminal history and amount of crack cocaine possessed and instead jump straight away to the career offender guidelines. For the majority, whether Mr. Wherry had 6 grams or 65 grams of crack is now inconsequential. Wherry was not punished for being a recidivist — he was punished for possessing crack cocaine with intent to distribute, then punished additionally for being a recidivist. The career offender provisions do not simply trump the rest of the sentencing scheme.
The majority’s formalistic reading ignores the very basis of USSG § 4B1.1. USSG § 4B1.1 is not independent of § 2D 1.1. The career offender section of the guidelines simply serve to enhance the punishment of an offender due to his criminal history, not to replace the punishment for dealing crack-cocaine. We must first look to that initial calculation — 32. The next step requires us to look at the punishment associated with that number — 10 years to life. The career offender provisions require us to look to the statutory maximum a person faces to determine the offense level. The only way to calculate that statutory maximum is to look at the amount of drugs associated with the conviction. In other words, without determining the quantity of crack cocaine, there is no statutory maximum and without knowing the statutory maximum, one cannot apply the career offender guidelines. These numbers are inextricably intertwined. Wherry’s sentence is “based on” the crack-cocaine guidelines, which have now been lowered by the Fair Sentencing Act and Amendment 750. The first prong of § 3582(c)(2) has been met.
The majority’s argument as to the second prong of § 3582(c)(2) is equally flawed because they base their reasoning, not on the language of the policy statement, but rather on their judicially constructed rule that says no crack defendant can get a reduction if he receives a career criminal enhancement.
There is no statute or guideline that says that a defendant’s sentence may not be reduced under the new Act because he had two prior felonies that labeled him a “career” criminal in the crack trade. Wherry received his 20-year sentence because of a combination of the old quantitative guideline provisions for selling 65 grams of crack and for having two prior felonies. There is no provision in any law anywhere that specifically says that such a long, discriminatory crack sentence may not be reduced simply because of a “career” criminal enhancement. My colleagues have quoted no such law to this effect. We are not required to so rule. A judicially-constructed rule such as the majority proposes serves to perpetuate the old racially discriminatory policy that Con *441 gress tried to change in the Fair Sentencing Act of 2010. Now thousands of African-American defendants like Wherry must remain in federal prisons for years without the intended redress. There is no purpose or policy behind such a judicially constructed rule, and my colleagues do not attempt to offer a reasoned justification. They just repeat the rule that, willy-nilly, a career criminal enhancement, for some unknown policy reason, eliminates the possibility of a reduction and serves to perpetuate the racial discrimination acknowledged in the new remedial statute. Under the new statute, designed it says in the preamble, to “restore justice,” Wherry would have received a guideline sentence with the same enhancements of fourteen years rather than twenty, making him eligible for release two years ago. Why keep him in prison now for four more years? It makes no sense, preserving injustice instead of “restoring justice.”